[Civ. No. 5410. First Appellate District, Division Two.—January 27, 1926.]

In the Matter of the Estate of Z. A. MASON, etc., Deceased.

[1] ESTATES OF DECEASED PERSONS—FAMILY ALLOWANCE—DISCRETION —APPEAL.—The amount to be allowed as a family allowance is wholly within the discretion of the probate court, and this discretion cannot be disturbed by the appellate court unless it can be shown to have been abused.

[2] ID.—AMOUNT OF FAMILY ALLOWANCE TO WIDOW—DISCRETION—EVIDENCE.—The granting of a family allowance of seventy-five dollars per month to a widow in proceedings for the probate of an estate, the appraised value of which is eleven thousand dollars, and the income from which is about sixty-four dollars per month, does not constitute an abuse of discretion on the part of the probate court,

1.  See 11 Cal. Jur. 510.

where such widow is sick and infirm and requires the aid of a nurse or other attendant, and has, outside of such family allowance, an income of about fifty-two dollars a month.

[3] ID. — PROBATE HOMESTEAD — COMMUNITY PROPERTY—APPEAL.—On this appeal from an order setting apart to a widow a probate homestead, the ruling of the trial court that the property set apart as a homestead constituted the community property of said widow and the deceased is sustained.

[4] ID. — ABSENCE OF DECLARATION — SETTING APART HOMESTEAD TO WIDOW.—Where no declaration of homestead has been made during the lifetime of the testator, it is essential, in order that a homestead may be set apart absolutely to a widow, to show that the property asked for is community property.

[5] ID. — SECTION 1465, CODE OF CIVIL PROCEDURE — CONSTRUCTION. — Under section 1465 of the Code of Civil Procedure, which provides that if no homestead has been selected, designated, and recorded "the court must select, designate and set apart and cause to be recorded, a homestead for the use of the surviving husband or wife and the minor children," the probate court has no discretion, except a discretion in the selection of a fit and proper place to be set apart as a homestead. A homestead may be set aside even though the estate is insolvent and the property set apart constitutes the whole estate; and the power of a testator to dispose of his property by will is subject to the duty placed upon the court in such cases, and heirs, devisees, legatees, and creditors are all subject to this duty of the court, which "must" set apart a homestead.

(1) 24 C. J., p. 238, n. 90.   (2) 24 C. J., p. 239, n. 9.   (3) 29 C. J., p. 1033, n. 13.   (4) 29 C. J., p. 1029, n. 34.   (5) 29 C. J., p. 930, n. 72, p. 996, n. 46, 47, p. 1029, n. 34, 35, p. 1030, n. 47.

APPEAL from orders of the Superior Court of Napa County granting family allowance and setting apart homestead. Percy S. King, Judge. Affirmed.

The facts are stated in the opinion of the court.

D. L. Beard and L. A. Maynard for Appellants.

Clarence N. Riggins for Respondent.

4.   See 11 Cal. Jur. 589.
5.   See 11 Cal. Jur. 586.

NOURSE, J.—Elizabeth Boling and Clara Rees, as legatees and devisees under the will of Z. A. Mason, deceased, have taken three separate appeals from three separate orders of the probate court in the above-entitled estate. All three appeals are presented to the court on a single typewritten record consisting of the clerk's and reporter's transcripts.

The first appeal is from an order granting to the widow of the deceased a temporary family allowance pending the filing of inventory and appraisement. The second appeal is from a similar order granting to the widow a family allowance pending administration and also setting aside certain exempt property to the widow. The third appeal is from an order setting apart to the widow a probate homestead which was claimed to be community property.

The only ground urged by the appellants on their appeals from the two orders relating to family allowance is that the allowance of $75 per month was unreasonable and excessive. The argument is that inasmuch as the appraised value of the estate was but $11,000 and that the income therefrom was about $64 per month at the time of the order the effect of the order is to give to the widow a part of the *corpus* of the estate under the guise of a family allowance. [1] It is conceded by the appellants that the amount to be allowed in cases of this kind is wholly within the discretion of the probate court and that this discretion cannot be disturbed by the appellate court unless it can be shown to have been abused. [2] In the record before us it appears that the widow is sick and infirm and requires the aid of a nurse or other attendant and that outside of the allowance made by the probate court she has an income of but $52 a month, consisting of $22 in rentals from her own private property and $30 as a pension from the federal government as a widow of the deceased, who was a Civil War veteran. We are not prepared upon this record to say that the trial court abused its discretion in the actions complained of.

As to the third appeal it appears that the deceased had some private property prior to his marriage to the surviving widow and that since their marriage (which occurred in 1903) he had purchased several lots of land in the city of Napa, had erected some houses thereon, and had received the rents therefrom; that during all of this time he had been

engaged as a carpenter and builder and was receiving from the federal government the sum of $12 per month as a pension for his services in the Civil War. It appears also that his greatest source of income was his wages. It appears also that the property which the probate court set aside to the widow was purchased for $300 in the year 1907 and that in 1910 he erected a home thereon. He then moved his family to this home and continued to occupy it as his home until the date of his death. There is no dispute that the cost of the erection of this home was borne by community funds, but it is appellants' contention that the lot itself must have been purchased from the separate property of the deceased and that the improvements thereon must follow the character of the land. The respondent relies upon the presumption that property purchased after marriage is community property and that the burden of proof rested upon the appellants to prove otherwise. This burden the appellants undertook to assume by the offer of the decedent's will, in which he stated that this property was his own separate property, and by the cross-examination of the widow wherein she contradicted herself as to her knowledge of the source of the funds. It appears, however, that in her direct examination she testified positively that at least part of the purchase price of the lot came from the decedent's wages and that she was uncertain as to the balance. The situation is, therefore, that as against the presumption that the property was community the appellants set up the conflict in their own evidence and ask the court to give greater weight to that conflict than to the presumption. [3] We are satisfied that the learned trial judge gave a correct interpretation of the law in the opinion which he filed on the granting of the application, and we therefore adopt as the opinion of this court so much of that opinion as is applicable to the order relating to the setting apart of the homestead and reading as follows:

"In this matter application has been made for a family allowance, for the setting apart to the widow of the property exempt from execution, and for a homestead. Objection is made to the setting apart of a homestead and to the making of a family allowance.

"No objection having been made to the application for the exempt property to be set apart to the widow, and the widow being legally entitled to it, that application will be granted.

[4] "As to the petition for a homestead: That a homestead may be set apart absolutely it is essential to show that the property asked for is community property, no declaration of homestead having been made during the lifetime of the testator. A consideration of the evidence presented on this subject shows that at the time of the marriage the testator had as his separate property some $3800, with which he came to California and settled in Napa.

"He bought a place on Franklin Street in Napa Dec. 29, 1903, the day after their marriage, taking the deed in the name of husband and wife. For this he paid either $1100 or $1200, and made improvements and alterations costing about as much. He was a carpenter and did most of the work himself. Therefore, when this property was improved, he probably had about $1500 left. As he was working on his own place, they probably lived on his capital.

"January 28, 1905, he bought the place on Seminary Street for $300, and thus apparently had but $1200 of his separate property left. February 7, 1905, he bought a place on Levee Street, paying $800, and thus leaving but $400 of his original capital. With this and other funds he built a seven-room hard-finished house and a three-story tank-house on the Seminary Street place. Doubtless the $800 which he received from the sale of the first lots in Chickasha about October, 1906, went also into this. At this time he had been married between two and three years, and the only separate property he had was the original $3800, this $800 received in October, 1906, and the sum of $500 received from an old debt, at a time not specified, making a total of $5100. He drew a pension, probably at this time of $12.00 a month, and was an industrious man receiving when he worked as a carpenter $2.75 to $3.00 a day. Having built two houses and a tank-house for himself during the period of say three years from Dec., 1903, date of his marriage it is more than probable that the living expenses for even this frugal family partly came from his capital.

"Then April 2, 1907, he bought the Wilson Street property, and improved it, and the funds with which this was done must have been the savings from his pension, rentals and earnings. On this he paid $300 purchase price and

erected a good house into which he and his wife moved in 1910, and in which she still lives. This is the house asked as a homestead. At this time his separate property must have been exhausted, and it was doubtless bought and improved from his earnings. At any rate it is impossible to trace any separate funds into it. The rentals of his improved property were negligible up to the time of buying the Wilson Street lot, because he had only one place till 1905, and only the Levee Street property was available for rental purposes then, until he completed the house on the Seminary Street lot, some time during that year. He thus had for rent only one or at most two houses for a period of less than two years prior to buying the Wilson Street property. It does not appear definitely when the first house on Wilson Street was completed, but it was probably not until 1910 when they moved into it.

"I am therefore satisfied that a fair showing has been made that the Wilson Street property, a portion of which is the subject of the application for homestead, was purchased and improved with community funds, constitutes the community property of the decedent and his surviving wife, and is suitable property for a homestead.

[5] "As to the law regarding a probate homestead: Section 1465 of the Code of Civil Procedure explicitly provides: That if no homestead has been selected, designated and recorded 'The court must select, designate, and set apart and cause to be recorded, a homestead for the use of the surviving husband or wife and the minor children.' The former law on this subject used the word 'May' instead of the present wording 'Must' but the courts then held that the duty was imperative. The court has no discretion, except a discretion in the selection of a fit and proper place to be set apart as a homestead. A homestead may be set aside even though the estate is insolvent and the property set apart constitutes the whole estate. The power of a testator to dispose of his property by will is subject to the duty placed upon the court in such cases, and heirs, devisees, legatees and creditors are all subject to this duty of the court, which 'Must' set apart a homestead. As a higher court once said in discussing this subject 'Any argument

against setting aside the homestead is properly addressed to the legislature in support of an amendment to the law.' "

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 25, 1926.